James E. MURPHY, Plaintiff–Appellant,

v.

DAIRYLAND INSURANCE COMPANY, Defendant–Appellee.

No. 86CA0698.

Colorado Court of Appeals, Div. III.

Oct. 8, 1987.

Rehearing Denied Nov. 5, 1987.

Pelton and Pelton, Bradford Pelton, Colorado Springs, for plaintiff-appellant.

Hall & Evans, E. William Shaffer, Jr., Brooke Wunnicke, Denver, for defendant-appellee.

CRISWELL, Judge.

Plaintiff, James Murphy, appeals the summary judgment entered against him in his suit to collect personal injury protection (PIP) benefits under an insurance policy issued by the defendant, Dairyland Insurance Company (Dairyland). The policy sued upon was issued to Bernard E. Taylor (the insured), who was driving an automobile with the consent of the owner and with plaintiff as a passenger when that vehicle was involved in an accident. The summary judgment was entered either because plaintiff was late in responding to Dairyland's motion therefor, or because the court concluded that the insured's policy did not provide PIP benefits to any passenger. Although the district court gave no reasons for the entry of its order, we address both issues because Dairyland contends that the trial court, in either event, reached the right result. We conclude that, if the judgment was premised upon the lateness of plaintiff's response to the motion, the trial court abused its discretion. We also conclude that the judgment could not properly be grounded upon the PIP provisions of Dairyland's policy because that policy does not comply with the pertinent statute. We therefore reverse the judgment.

The insured did not own an automobile. Nevertheless, he purchased an automobile insurance policy from Dairyland that provided liability, uninsured motorist, and PIP coverages. The owner of the vehicle driven by him had no insurance.

Of course, since the insured had no vehicle to insure, none was described in his policy; in the space provided in the policy declarations for a "description of vehicle," there appeared the typed phrase, "named operator." An endorsement applicable only to the liability coverage provided that the policy insured "any car used" by the insured, "whether owned or not." Further, in what Dairyland referred to as "plain talk" provisions, its policy said that it in-

sured "any car described on the declarations page," as well as "other cars you use with the permission of the owner."

However, the specific PIP provisions of the policy, which by the policy terms supersede any inconsistent general provisions, provide benefits to a passenger, who is not related to the insured, only for bodily injuries received while "occupying the insured motor vehicle." Those provisions define an "insured motor vehicle" as one, *inter alia,* "of which the named insured is the owner." It was on the basis of these latter provisions that Dairyland denied that the policy issued to the insured provided any PIP benefits to a non-related passenger such as plaintiff.

Plaintiff's response to Dairyland's motion for summary judgment was a cross-motion for summary judgment and supporting brief that were filed five days after the date the pre-trial order called for his response to Dairyland's motion to be filed. The order granting Dairyland's motion was entered four days before that cross-motion was filed. However, the order did not indicate whether the court granted Dairyland's motion because it considered plaintiff to have confessed it by not filing a timely response, *see* C.R.C.P. 121 § 1–15, or because it had concluded that Dairyland's motion was meritorious.

### I.

■ Dairyland's motion for summary judgment was anticipated by the parties' stipulated pre-trial order that set a date for its filing and that allowed plaintiff to file a response within 30 days. On the 31st day following its filing, the district court entered its order, which contained no explanation for its action.

C.R.C.P. 121 § 1–15 is by its language applicable to all written motions not made during trial, and it provides that the failure of a responding party to file a brief opposing a motion "may be considered a confession of the motion." We assume that this rule provision is applicable to motions for summary judgment.

■ However, the general rule is that a party moving for such a judgment must affirmatively establish his right thereto; the failure of the party against whom such a motion is filed to present controverting affidavits or other evidentiary materials does not, in itself, provide a proper basis for the entry of such a judgment. *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978).

Moreover, unlike orders granting many other pre-trial motions, an order granting a motion for summary judgment is one which may finally determine substantive rights and may, indeed, terminate the litigation. If an order granting such a motion is based upon the quoted provision of C.R.C.P. 121, it is, in effect, the equivalent of the entry of a default judgment. And, under C.R.C.P. 55(b)(2) a default judgment may not be entered against a party who has appeared in the action, except upon three days' notice of the application therefor.

The distinctive nature of a motion for summary judgment does not lead us to conclude that C.R.C.P. 121 is inapplicable thereto, or that C.R.C.P. 55(b)(2) must be followed in every case where a summary judgment is based upon the confession provisions of C.R.C.P. 121. In this case, however, since the due date of plaintiff's response was established by stipulation, and since the district court's action was taken only a single day after that due date, without inquiry of, or notice to, the plaintiff, we conclude that, if the court's action was grounded upon the provisions of C.R.C.P. 121, such action constituted an abuse of discretion. *See Bankers Union Life Insurance Co. v. Fiocca,* 35 Colo.App. 306, 532 P.2d 57 (1975).

### II.

We also conclude that the judgment is erroneous even if it was not based upon C.R.C.P. 121, but was based upon the merits of Dairyland's motion.

### A.

It is the PIP endorsement to the Dairyland policy that prescribes the circumstances under which PIP benefits are payable.

Included within the PIP endorsement is a series of definitions, and they control the extent of the PIP coverage insofar as they may differ from the definitions contained elsewhere in the policy. Under these PIP definitions, an "insured motor vehicle" is one that is *owned* by the named insured.

Since the liability coverage under the Dairyland policy extends to any vehicle used by the insured, whether owned by him or not, that coverage of the policy extended to the vehicle involved here. However, the vehicle driven by the insured was not one owned by him. By the express, unambiguous terms of the PIP endorsement, PIP coverage did not extend to unrelated passengers riding with the insured in that vehicle. Thus, the policy's PIP coverage did not extend to plaintiff.

### B.

■ Any policy providing PIP benefits must comply with the requirements of the Colorado Auto Accident Reparations Act (Auto Reparations Act), § 10–4–701, et seq., C.R.S., and any policy provision inconsistent with that statute's provisions is void. *See Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984) (policy limitation requiring injuries to occur out of use of motor vehicle "as a motor vehicle" is invalid); *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984) (household exclusion to liability coverage is invalid because it is inconsistent with Auto Reparations Act).

■ Hence, since the language of the Dairyland policy operates to exclude passengers from its PIP coverage, the issue presented is whether such restriction violates Colorado's public policy as that public policy is reflected in the provisions of the Auto Reparations Act. We conclude that it does.

The Auto Reparations Act generally requires "every owner of a motor vehicle," who operates, or who allows the operation of, that vehicle on the public highways of this state, to have in full force and effect an insurance policy providing the PIP benefits described in that statute. Section 10–4–705(1), C.R.S. (1986 Cum.Supp.). For purposes of the benefits required to be provided, the Auto Reparations Act establishes three categories of claimants. The "named insured" is covered when his injuries are sustained in an accident "involving any motor vehicle." Section 10–4–707(1)(a), C.R.S. Likewise, injuries sustained by a "relative" of the named insured qualify for benefits if they result from an accident involving any motor vehicle. Section 10–4–707(1)(b), C.R.S. For "any other person," however, the statute requires that benefits be provided only if the injury occurs while that other person is "occupying the *described* motor vehicle." Section 10–4–707(1)(c), C.R.S. (emphasis supplied). The "described motor vehicle" is the one "described in the complying policy." Section 10–4–703(4), C.R.S.

Section 42–4–1213, C.R.S. (1984 Repl.Vol. 17), however, prohibits *anyone* from operating a motor vehicle within this state without coverage under a policy that complies with the Auto Reparations Act. Thus, there is imposed upon both the vehicle's owner and its operator an obligation to see to it that there is a policy in effect that provides the benefits mandated by the Auto Reparations Act. If each has obtained a separate policy, the operator's policy is required to be treated as providing the primary coverage. Section 10–4–707(4), C.R.S. (1986 Cum.Supp.).

Finally, the right of any person for whom the Auto Reparations Act mandates benefits to assert a claim against the owner or operator of the vehicle causing him injury is limited. Section 10–4–714(1), C.R.S. If, however, the motor vehicle is not covered by a complying policy, such limitations upon a suit against either the owner or the operator are inapplicable. Section 10–4–715(1)(b), C.R.S.

At the same time, Colorado's Motor Vehicle Financial Responsibility Act, § 42–7–101, et seq., C.R.S. (1984 Repl.Vol. 17), requires both the owner and the operator of a motor vehicle to demonstrate that they are financially responsible to satisfy a judgment that might be recovered against them as a result of an accident. This statute contains specific provisions authorizing

the issuance of an "operator's policy" to allow a non-owner operator to comply with its provisions. Section 42–7–411, C.R.S. (1984 Repl.Vol. 17). The Auto Reparations Act, on the other hand, contains no similar provisions.

The practice of issuing an operator's policy that does not describe a specific vehicle, but that provides liability coverage for the named insured for any vehicle being operated, was instituted so as to allow a non-owner operator to meet his obligations under a state's financial responsibility laws. *See* 12A G. Couch, *Cyclopedia of Insurance Law 2d* §§ 45:749–45:756 (rev. ed. 1981). Under such policies, the liability coverage provided is in no way dependent upon the policy description of a specific vehicle. To this extent, the statutorily required PIP coverage for a named insured or for a relative is similar. That PIP coverage also applies to injuries resulting from an accident involving any motor vehicle; benefits are not limited to injuries associated with the use of a specific vehicle.

In contrast to these situations, however, the statutory PIP coverage for passengers extends only to injuries sustained while occupying a vehicle described in a complying policy. If, as here, the policy does not contain such a description, no passenger is provided with any PIP benefits. In our view, various provisions of the Auto Reparations Act demonstrate that the General Assembly did not intend that a policy could be a "complying policy" if it is thus written so as to exclude all passenger benefits.

■ The provisions of the Auto Reparations Act are designed to accomplish multiple purposes, which include assuring that accident victims receive adequate compensation and limiting the number of common law tort actions that may be commenced. Hence, that statute must be liberally construed in light of its entire statutory scheme. *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

The statutory provisions referring to a "described motor vehicle" as one "described in the complying policy" contain an implicit premise that a complying policy will describe a motor vehicle, so that such a policy will provide passenger coverage. This underlying premise is evidenced by the absence of any provision in the statute authorizing the issuance of a non-owner operator's policy to provide PIP benefits. In view of the express authorization for such policies under the Motor Vehicle Financial Responsibility Act, the omission of such authorization under the Auto Reparations Act is of some significance. *See People v. Enlow*, 135 Colo. 249, 310 P.2d 539 (1957).

Moreover, both an owner and an operator are required to insure that there is liability coverage, and every carrier that provides liability coverage is required also to provide PIP coverage. Section 10–4–711(4)(b), C.R.S. These provisions, considered in light of that statute's designation of the operator's policy as the one which is to provide the primary PIP coverage, demonstrate a legislative intent to assure that a passenger injured in an accident involving a covered vehicle shall be provided with PIP benefits, whether it is the vehicle's owner or an independently insured operator who may be driving at the time.

Finally, if an operator's policy that fails to describe a vehicle or to treat the one being driven by the operator as a described vehicle for purposes of the Auto Reparations Act were to be considered as a complying policy, an anomaly would be created. Under such a ruling, since no vehicle is described in such a policy, PIP benefits would not be available to any non-related passenger under that policy, but the statutory limitation upon tort actions would nevertheless apply to any claim that the passenger might try to assert against the insured operator. In our view, the General Assembly did not intend this class of persons to be accorded such disparate treatment.

■ We hold, then, that in order to be a "complying policy" under the Auto Reparations Act, an automobile insurance policy providing PIP coverage must describe one or more motor vehicles. If, as here, the insured owns no motor vehicle, the policy may designate as a described motor

vehicle any vehicle operated by the insured with the consent of the owner.

In this case, the specific definition of insured motor vehicle adopted by Dairyland's policy for its PIP coverage is too limited and subverts the statutory purpose; it is, therefore, void. Thus, the general policy definition of such term ("any car used" by the insured) must be the definition utilized in determining plaintiff's entitlement to PIP benefits under that policy.

### III.

Accordingly, the district court erred in entering summary judgment in Dairyland's favor. In view of the fact that that court did not pass upon plaintiff's cross-motion, however, and because plaintiff's receipt of settlement proceeds from Dairyland under the policy's liability coverage may give rise to "double recovery" issues under *Marquez v. Prudential Property and Casualty Insurance Co.,* 620 P.2d 29 (Colo.1980) and *Camacho v. Daffern,* 622 P.2d 610 (Colo. App.1981), the cause must be remanded for further proceedings.

The judgment is reversed and the cause is remanded to the district court for a determination of any remaining factual or legal issues presented.

KELLY and TURSI, JJ., concur.