Angelique SCOGGINS,
Plaintiff–Appellee,

v.

UNIGARD INSURANCE COMPANY,
Defendant–Appellant.

No. 92CA0111.

Colorado Court of Appeals,
Div. V.

Dec. 31, 1992.

Rehearing Denied Feb. 18, 1993.

Certiorari Granted Aug. 30, 1993.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, for plaintiff-appellee.

Greengard Senter Goldfarb & Rice, Joel S. Babcock, Denver, for defendant-appellant.

Opinion by Judge MARQUEZ.

In this action for damages resulting from an auto accident, defendant, Unigard Insurance Company, appeals from a judgment entered in favor of plaintiff, Angelique Scoggins, finding Unigard obligated to pay benefits to Scoggins under the Auto Accident Reparations Act, § 10–4–701, et seq. (1987 Repl.Vol. 9A) (No–Fault Act). We reverse.

The following ·facts are undisputed. Scoggins was injured while riding as a passenger in an uninsured vehicle involved in a single vehicle accident in Colorado Springs. The owner and another passenger were killed.

The driver, Joseph Martinez, did not have an auto insurance policy of his own, but was listed as an additional insured on a policy issued to his parents by Unigard. That policy did not list the auto involved in this accident as an insured auto, and neither Scoggins nor the owner of the automobile involved in the accident was in any way related to Martinez' parents, a resident of their household, or a named insured under their policy.

Unigard acknowledged liability coverage for Martinez and paid Scoggins' liability claim. While Unigard acknowledged no-fault personal injury protection (PIP) for the driver, it denied PIP coverage on Scoggins.

Scoggins sued Martinez, the estate of the owner of the uninsured vehicle, and Unigard, alleging, *inter alia,* that Unigard had failed to provide PIP benefits. Unigard moved for summary judgment, seeking a determination that Unigard was not· obligated to provide PIP benefits to Scoggins. Scoggins filed a cross-motion for summary judgment, requesting the court to order Unigard to provide her with PIP benefits.

Relying on *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691 (Colo.App.1987), the court concluded that if Martinez was the operator he had a legally prescribed duty to be insured, but initially denied both motions after determining that a genuine issue of fact remained as to the operator of the vehicle. However, Unigard ultimately stipulated for the limited purposes of the PIP coverage determination that it did not dispute that Martinez was the driver, and the trial court then entered judgment in favor of Scoggins.

I.

Unigard asserts that Scoggins is not entitled to no-fault benefits under the policy. It further asserts that the language of the policy tracks the provisions of the No–Fault Act in defining the scope of individuals covered under its no-fault provisions. However, the provisions covering PIP benefits were not included in the appellate record. We are thus limited in our review to the policy and those references to the PIP endorsement contained in the record. We cannot conclude from those references, and Scoggins does not appear to. contend, that the policy's scope of coverage is greater than that mandated by the No–Fault Act.

II.

A.

Unigard next asserts that Scoggins is not an insured entitled to PIP benefits under the provisions of the No–Fault Act. We agree.

In *Murphy v. Dairyland Insurance Co., supra,* the driver did not own any automobile; thus, there was no described automobile in the policy. The question was whether, in that situation, the policy provided PIP benefits to a passenger injured in an auto accident while the insured was driving. After noting that statutory PIP coverage for passengers extends only to injuries sustained while occupying a vehicle described in a complying policy, the court held that in order to be a "complying poli-

cy" under the No–Fault Act, an automobile insurance policy providing PIP coverage must describe one or more motor vehicles. If the insured owns no motor vehicles, the policy may designate as a described motor vehicle any vehicle operated by the insured with the consent of the owner.

### B.

The No–Fault Act governs rights and liabilities for personal injuries resulting from automobile accidents, including personal injury protection for medical benefits. *Tate v. Industrial Claims Appeal Office,* 815 P.2d 15 (Colo.1991). There are three categories of persons to whom the coverage is extended by the Act.

(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of this part 7;

(b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this sub-section (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as the result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7;

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured or while a pedestrian if injured in an accident involving the described motor vehicle.

Section 10–4–707(1), C.R.S. (1987 Repl.Vol. 4A).

None of these provisions applies to Scoggins; however, Scoggins points to § 10–4–707(4), C.R.S. (1987 Repl.Vol. 4A) as mandating her qualification for PIP benefits. We do not so read that statute.

Section 10–4–707(3), C.R.S. (1987 Repl. Vol. 4A) provides:

Except as provided in subsection (4) of this section, when a person insured is also an insured under a complying policy other than the complying policy insuring the vehicle out of the use of which the accident arose, primary coverage shall be afforded by the policy insuring said vehicle under section 10–4–706; but in the event two or more insurers have obligations under complying policies to pay benefits to the same person, the limits of coverage available as benefits to such person shall be the limits of a single complying policy except to the extent that optional coverages purchased for additional premiums on a voluntary basis are applicable. In the event two or more insurers are liable to pay benefits on the same basis, any insurer paying benefits shall be entitled to an equitable pro rata contribution from such other insurer.

Section 10–4–707(4), C.R.S. (1987 Repl. Vol. 4A) provides:

When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident nor an employee of the owner, and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the policy insuring the said operator, except as provided in subsection (6) of this section, and any policy under which the owner is an insured shall afford excess coverage ...

In Scoggins' view, since Martinez did not own the vehicle and was driving it with the permission of the owner, the policy covering Martinez becomes primary under the terms of § 10–4–707(4). Unigard urges that § 10–4–707(4) does not create additional circumstances for coverage, but merely establishes priority among existing PIP policies which may be involved or affected by the same accident. We agree with Unigard.

Sections 10–4–707(3) and (4) establish priority among policies when two or more insurers have potential liability in an accident. *See Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Tate v. Industrial Claim Appeals Office, supra.* Thus, any policy covering Martinez, and providing PIP benefits to passengers, would be primary over a policy purchased by the owner of the auto involved in the accident.

■■■■■ However, the persons to whom the priorities of §§ 10–4–707(3) and (4) apply are those set forth in § 10–4–707(1). The statutory PIP coverage for passengers extends only to injuries sustained while occupying a vehicle described in a complying policy. *Murphy v. Dairyland Insurance Co., supra.* It is undisputed that the auto involved in this accident was not a described motor vehicle in the policy through which Scoggins seeks PIP benefits.

We conclude that Scoggins is not a person covered by the provisions of § 10–4–707.

The judgment is reversed.

HUME, J., concurs.

JONES, J., dissents.

Judge JONES dissenting.

I respectfully dissent.

Scoggins points out that even though none of the relevant provisions of § 10–4–707(1), C.R.S. (1987 Repl.Vol. 4A) applies to her, nevertheless, § 10–4–707(4), C.R.S. (1987 Repl.Vol. 4A) mandates her qualification for PIP benefits. I agree that she should be provided PIP benefits under the policy issued to the parents of Martinez.

Section 10–4–707(3), C.R.S. (1987 Repl. Vol. 4A) provides in part:

Except as provided in subsection (4) of this section, when a person insured is also an insured under a complying policy other than the complying policy insuring the vehicle out of the use of which the accident arose, primary coverage shall be afforded by the policy insuring said vehicle under § 10–4–706....

Section 10–4–707(4), C.R.S. (1987 Repl. Vol. 4A) provides in part:

When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident nor an employee of the owner, and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the policy insuring the said operator, except as provided in subsection (6) of this section, and any policy under which the owner is an insured shall afford excess coverage.

Sections 10–4–707(3) and (4) coordinate benefits when an injured person would qualify for coverage, pursuant to § 10–4–707(1), under several different no-fault policies. *Tate v. Industrial Claims Appeals Office,* 815 P.2d 15 (Colo.1991).

The provisions of the No-fault Act are designed to accomplish multiple purposes, which include assuring that accident victims receive adequate compensation and limiting the number of common law tort actions that may be commenced. Hence, that statute must be liberally construed in light of its entire statutory scheme. *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691 (Colo.App.1987).

Unigard concedes that, if it is assumed that each individual in the vehicle had a complying policy under the No-fault Act, then § 10–4–707(4) would render the parents' primary over the policy of the owner. However, under the interpretation advanced by Unigard, because of the fortuitous event that the owner of the vehicle was not insured, no coverage for PIP benefits is available to Scoggins. Further, under Unigard's interpretation, one of the purposes of the No–Fault Act—assuring that accident victims receive adequate compensation—is frustrated.

In interpreting a statute, our purpose is to determine the intent of the General Assembly. In light of the legislative purpose to avoid inadequate compensation to victims of automobile accidents, § 10–4–702, C.R.S. (1987 Repl.Vol. 4A), I conclude that the policy of Martinez' parents is the primary policy, albeit the only one, under the provisions of § 10–4–707(4) and that Scoggins is entitled to PIP benefits under that policy.

Thus, I would affirm the judgment of the trial court.