Angelique SCOGGINS, Petitioner,

v.

UNIGARD INSURANCE COMPANY,
Respondent.

No. 93SC170.

Supreme Court of Colorado,
En Banc.

Feb. 14, 1994.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, for petitioner.

Greengard Senter Goldfarb & Rice, Joel S. Babcock, Denver, for respondent.

Richard W. Laugensen, amicus curiae, Denver.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to determine whether a passenger in an automobile may recover personal injury protection (PIP) benefits un-

der the driver's policy when the automobile involved in the accident is not described in the policy. In *Scoggins v. Unigard Insurance Co.*, 857 P.2d 488 (Colo.App.1993), the court of appeals held that PIP benefits only extend to passengers injured while occupying an automobile that is described in a complying policy. We agree and, accordingly, we affirm the court of appeals.

I

On April 4, 1989, Angelique Scoggins (Scoggins) was a passenger in a vehicle operated by Joseph Martinez (Martinez) and was severely injured as the result of the alleged negligence of Martinez.[1] The owner of the vehicle was not insured.[2] Although Martinez did not have personal liability or automobile insurance, his parents had a policy issued by Unigard Insurance Co. (Unigard) that provided coverage to Martinez as an additional insured.[3] The Unigard policy did not list the automobile involved in the accident as an insured vehicle.

Unigard acknowledged liability coverage for Martinez and paid Scoggins' liability claim. Unigard also admitted no-fault PIP coverage for Martinez but denied PIP benefits to Scoggins.

Scoggins filed a civil action for damages against Martinez and the estate of the deceased owner based on allegations of negligent operation and negligent entrustment of the automobile. Scoggins also filed a separate claim against Unigard alleging she was entitled to PIP benefits under the policy issued by Unigard to Martinez's parents. In November of 1991, Scoggins' liability claim was settled for the full amount of the Unigard liability policy. Therefore, the only remaining issue was Scoggins' claim against Unigard for PIP benefits.

Unigard filed a motion for summary judgment in the district court asserting that the

policy issued to Martinez's parents did not obligate Unigard to provide no-fault and PIP benefits. Scoggins filed a cross-motion for summary judgment asserting that Unigard was required to pay her the benefits. On December 18, 1991, after Unigard stipulated that Martinez was the driver, the district court entered judgment against Unigard.

Unigard appealed and the court of appeals reversed the district court. The court of appeals held that Scoggins was not entitled to PIP benefits under Martinez's parents policy because "statutory PIP coverage for passengers extends only to injuries sustained while occupying a vehicle described in a complying policy." *Scoggins*, 857 P.2d at 491. We agree with the court of appeals.

II

No-fault insurance is provided in the Colorado Auto Accident Reparations Act (No–Fault Act). §§ 10–4–701 through 725, 4A C.R.S. (1987 & 1993 Supp.). PIP coverage is required by the No–Fault Act and PIP benefits are payable without regard to fault. While liability insurance is also a part of the No–Fault Act, it is distinct from PIP benefits because liability insurance provides coverage based on fault. Liability is not an issue in this case.

A

■ The No–Fault Act governs rights and liabilities for personal injuries resulting from automobile accidents, including personal injury protection for medical benefits. *Tate v. Industrial Claim Appeals Office*, 815 P.2d 15 (Colo.1991). The legislative declaration of the No–Fault Act states the purpose of the General Assembly in enacting the statute:

**Legislative declaration.** The general assembly declares that its purpose in enacting this part 7 is to avoid inadequate compensation to victims of automobile acci-

---

1. Although it was never conclusively established that Martinez was driving the automobile at the time of the accident, for purposes of this review, Unigard has stipulated that Martinez was the vehicle's operator.

2. The owner of the vehicle and another passenger were killed. Martinez was not injured.

3. Martinez, who lived at his parents' house, is an insured under § 10–4–703(6), 4A C.R.S. (1987), which provides: "'Insured' means the named insured, relatives of the named insured who reside in the same household as the named insured...."

dents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

§ 10–4–702, 4A C.R.S. (1987). The No–Fault Act was also intended to reduce the number of tort · actions commenced. *Murphy v. Dairyland Ins. Co.,* 747 P.2d 691 (Colo.App. 1987); *see also* 8D John Alan Appleman, *Insurance Law and Practice* § 5151 (1981) (describing major purposes behind no-fault acts).

PIP coverage is compulsory and the No–Fault Act places the obligation of procuring insurance on the *owner of a vehicle* registered and licensed in the state. § 10–4–705, 4A C.R.S. (1987). In addition to the owner being subject to various sanctions and consequences for failing to have complying coverage, the No–Fault Act also makes the owner a constructive self-insurer for all the PIP benefits that should have been provided. § 10–4–705, 4A C.R.S. (1987).

### B

■ Only certain injured persons, however, are eligible to receive PIP benefits. The No–Fault Act specifically identifies the persons eligible for PIP benefits in section 10–4–707(1)(a) through (1)(c):

**Benefits payable.** (1) The coverages described in section 10–4–706(1)(b) to (1)(e) shall be applicable to:

(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of this part 7;

(b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of this part 7;

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by *any other person* while occupying the *described motor vehicle* with the consent of the insured or while a pedestrian if injured in an accident involving the *described motor vehicle.*

(Emphasis added.) The term "described motor vehicle" in section 10–4–707(1)(c) is defined as the "motor vehicle described in the complying policy." § 10–4–703(4), 4A C.R.S. (1987).

### C

■ In addition to defining who is eligible for PIP benefits, the No–Fault Act sets forth primacy rules that govern when there are two or more policies under which a claiming party has eligibility. The basic primacy rule, with statutory criteria, is set forth in section 10–4–707(3), 4A C.R.S. (1987):

(3) Except as provided in subsection (4) of this section, when a person injured is also an insured under a complying policy other than the complying policy insuring the vehicle out of the use of which the accident arose, primary coverage shall be afforded by the policy insuring said vehicle under section 10–4–706; but in the event two or more insurers have obligations under complying policies to pay benefits to the same person, the limits of coverage available as benefits to such person shall be the limits of a single complying policy except to the extent that optional coverages purchased for additional premiums on a voluntary basis are applicable. In the event two or more insurers are liable to pay benefits on the same basis, any insurer paying benefits shall be entitled to an equitable pro rata contribution from such other insurer.

The primacy rule that is applicable when the accident involves a vehicle driven by someone other than the owner is enunciated in section 10–4–707(4), 4A C.R.S. (1987) (emphasis added):

(4) When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident nor an employee of the owner, and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, *primary coverage as to all coverages provided in the policy under which the operator is an insured* shall be afforded by the policy insuring the said operator, except as provided in subsection (6) of this section, and any policy under which the owner is an insured shall afford excess coverage. When an accident involves the operation of a motor vehicle regulated under the provisions of article 10 or 11 of title 40, C.R.S., the provisions of subsection (3) of this section shall apply.

Therefore, the primacy rules do not confer eligibility, but operate only when there are two or more policies and a choice must be made between them.

### III

Scoggins contends that she is entitled to PIP benefits because the legislative intent of the act, and the statutory language indicate that Martinez's parents policy provides her with PIP benefits. Specifically, Scoggins asserts that section 10–4–707(4) controls and makes the Unigard policy the primary coverage policy. She also urges that denying her benefits would lead to the unintended and bizarre result of denying her adequate compensation merely because of the fortuitous event that the owner of the vehicle was not insured. We disagree.

 Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Farmer's Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991). To discern intent, we first look to the plain language of the statute. *People v. Terry*, 791 P.2d 374 (Colo.1990). If the language of the statute is clear and the intent of the General Assembly may be discerned with certainty, it is not necessary to resort to other rules of statutory interpretation. *McKinney v. Kautzky*, 801 P.2d 508 (Colo.1990). Therefore, even if the intent of the General Assem-

bly can be disputed, if the plain language of the statute is clear, it is controlling. *See Passamano v. Travelers Indemnity Co.*, No. 92SC80, (Colo. Jan. 31, 1994). We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate. *See Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990) (holding that the court should be careful to avoid judicial legislation by adding to a statute that which the legislature did not deem proper); *Jones v. People*, 155 Colo. 148, 393 P.2d 366 (1964) (stating that the court may not change the laws enacted by the legislature); *Adams v. Safeco Ins. Co.*, 674 P.2d 999 (Colo.App.1983) (holding that courts may not interpret the No–Fault Act to mean something different from what is stated), *aff'd*, 686 P.2d 1331 (Colo.1984).

In this case, the plain language of the No–Fault Act states that a passenger in an automobile is not entitled to benefits under the driver's policy where the automobile which was involved in the accident was not described in the complying policy. The eligibility rule in section 10–4–707(1)(c) only permits passenger recovery of PIP benefits if the complying policy under which the injured passenger seeks to recover the benefits lists the vehicle involved in the accident. The Unigard policy only described two vehicles, neither of which was the vehicle involved in the accident. The effect of section 10–4–707(1)(c) is to bar recovery of PIP benefits to passengers of vehicles involved in accidents from non-owner, insured drivers when the automobile and the automobile's owner are uninsured.

The primacy rule contained in section 10–4–707(4) does not change this result. Under section 10–4–707(4), the non-owner operator's policy provides primary coverage only "as to all coverages provided in the policy under which the operator is insured." We disagree with Scoggins' contention that this statutory language automatically extends PIP coverage to all occupants of the motor vehicle. The statute requires that we examine the operator's policy to determine which coverages are actually provided. In most (if not all) instances, an operator's policy will provide cov-

erage only for those persons for whom PIP coverage is mandatory under the eligibility provisions contained in section 10–4–707(1). In other words, the operator's policy will be primary with respect to the named insured and any passengers who are the operator's resident relatives. *See* § 10–4–707(1)(a) and (b). However, section 10–4–707(4) will not apply to passengers such as Scoggins. This is because PIP coverage need not be provided for non-relative occupants when the vehicle involved in the accident is not the vehicle described in the operator's policy. *See* § 10–4–707(1)(c).

Scoggins' failure to receive PIP benefits from the Unigard policy is not contrary to the intent of the General Assembly. Even though the General Assembly created the No–Fault Act to provide adequate insurance coverage for every motorist, PIP benefits can only be recovered within the statutory limitations on eligibility. § 10–4–702, 4A C.R.S. (1987). The fact that a motorist is prohibited from recovering benefits from a particular source does not frustrate the intent of the legislature. In this case, because the owner did not have the required coverage, the No–Fault Act made the owner a constructive self-insurer, § 10–4–705(2), 4A C.R.S. (1987), and therefore Scoggins may have a direct claim against the owner for the PIP benefits she would have received if the owner had complied with the law.[4]

### IV

Scoggins also contends that to the extent the Unigard policy does not provide her with no-fault benefits, Martinez should be personally liable for the equivalent of PIP benefits or subject to civil or criminal penalties for failing to have a complying no-fault policy. The owner, not Martinez, failed to comply with the No–Fault Act.

**4.** Scoggins asserts that holding is contrary to *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691 (Colo.App.1987), and is also contrary to *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976), and *United Services Automobile Association v. Allstate Insurance Co.,* 662 P.2d 1102 (Colo.App.1983). We disagree. *Murphy* involved an insured who did not own an automobile and therefore there was no "described motor

The No–Fault Act does not require a non-owner operator to procure PIP benefit coverage. Moreover, there is no statutory requirement that an insurer of some other vehicle provide PIP coverage for non-relative occupants of a non-owned vehicle. Instead, the provisions of the No–Fault Act indicate that only the owner-insurer is required to provide PIP coverage. Subsection (1) provides:

> Every *owner* of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of a motor vehicle on the public highways of the state *shall* have in full force and effect a complying policy under the terms of this part 7 *covering the said motor vehicle,* and any *owner* who fails to do so *shall be subject to the sanctions provided under* section 42–4–1213 and section 42–7–301, C.R.S. of the "Motor Vehicle Financial Responsibility Act."

§ 10–4–705(1), 4A C.R.S. (1987) (emphasis added). Subsection (2) states:

> Any *owner* of a motor vehicle who operates the motor vehicle on public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state who fails to have in full force and effect a complying policy *covering said motor vehicle at the time of any accident,* on account of which benefits under section 10–4–706(1)(b) to (1)(e) would be payable, *shall be personally liable* for the payment of such benefits to the person for whom such payment would have been required, if such coverage had been in effect under the terms of section 10–4–707. *Such owner* shall have the rights and obligations of any insurer under this part 7.

§ 10–4–705(2), 4A C.R.S. (1987) (emphasis added).

vehicle" in his policy. The court of appeals in *Murphy* rewrote the policy to comply with the No–Fault Act and held that the non-owner operator and his insurer were constructively presumed to have intended borrowed vehicles to be the described motor vehicles. In this case, there was a complying policy. *Barnes* and *Allstate* involved the primacy provisions of the No–Fault Act, not the eligibility provisions.

Accordingly, it was the owner of the vehicle who failed to comply with the law and caused the deficiencies in the coverage to Scoggins. Because the Unigard policy complied with the requirements contained in both the Motor Vehicle Financial Responsibility Act and the No–Fault Act, Scoggins has not raised a legitimate basis on which Martinez could be subject to personal PIP exposure or other penalties.

### V

Scoggins is not entitled to PIP benefits under the Unigard policy issued to Martinez's parents because the automobile involved in the accident was not described in the policy as required by section 10–4–707(1)(c), 4A C.R.S. (1987). Accordingly, we affirm the judgment of the court of appeals.