**John ORTIZ, Plaintiff–Appellee,**

v.

**HAWKEYE–SECURITY INSURANCE COMPANY, Defendant–Appellee,**

and

**American Hardware Mutual Insurance Group, Defendant–Appellee.**

No. 96CA1926.

Colorado Court of Appeals,
Div. IV.

Feb. 5, 1998.

Rehearing Denied May 19, 1998.

Certiorari Denied Jan. 25, 1999.

No Appearance for Plaintiff–Appellee.

Rodman & Ross–Shannon, John R. Rodman, Raymond J. Lego, Denver, for Defendant–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Michael Brice Sullivan, Englewood, for Defendant–Appellee.

Opinion by Judge HUME.

Defendant, Hawkeye–Security Insurance Company (Hawkeye), appeals the trial court's summary judgment determining that under the Colorado Auto Accident Reparations Act (No-fault Act), § 10–4–701, et seq., C.R.S.1997, it was required to provide personal injury protection (PIP) benefits coverage and finding it liable for such benefits paid by American Hardware Mutual Insurance Group (American) to plaintiff, John Ortiz. We affirm.

The facts are undisputed. Plaintiff owns and operates an auto detailing business. The business does not own any motor vehicles. Employees routinely drive the customers' cars to the business premises for service and return them when the work is finished.

Plaintiff's business was insured by Hawkeye as a company authorized to transact business in this state under a policy commonly referred to as a "garage policy." The policy provided liability coverage for certain denominated autos, including "non-owned autos used in your garage business."

As plaintiff was driving a customer's car to the garage for detail work, he was struck by a car driven by another person. The owner of the vehicle driven by plaintiff had a complying insurance policy issued by American. Plaintiff filed a claim with Hawkeye for PIP benefits for injuries resulting from the accident. Hawkeye did not dispute that the accident arose from garage operations but denied the claim on the ground that the garage policy did not include PIP benefits coverage. Plaintiff then applied to American for PIP benefits. American also denied coverage, claiming that it was not primarily responsible for such benefits. Subsequently, plaintiff filed this action against both companies asserting violations of § 10–4–708,

C.R.S.1997, and claims of bad faith. American settled its claims with plaintiff and filed a cross-claim seeking equitable subrogation to recover the PIP benefits it had paid.

On cross-motions for summary judgment by Hawkeye and American, the trial court determined that Hawkeye was obligated to pay PIP benefits and entered judgment in favor of American on its cross-claim for equitable subrogation. That judgment was certified as final for purposes of appeal, and plaintiff's remaining claim of bad faith against Hawkeye was set for separate trial.

■ The sole issue on appeal is whether an insurer who issues a liability policy covering the operations of a garage business which owns no vehicles is required to provide PIP benefits coverage. Hawkeye contends that because the No-fault Act places the obligation to obtain PIP benefits coverage on motor vehicle owners, an insurer is not obligated to provide PIP benefits coverage under a garage policy that provides only limited automobile liability coverage for accidents resulting from garage operations involving the ownership, maintenance, or use of a covered vehicle. We conclude that Hawkeye is required to provide PIP benefits coverage under the policy it issued.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that no genuine issue as to any material fact exists. The non-moving party is entitled to the benefit of all favorable inferences that reasonably may be drawn from the undisputed facts, and all doubts are to be resolved against the moving party. *Peterson v. Halsted,* 829 P.2d 373 (Colo. 1992).

In interpreting statutes, our primary task is to give full effect to the intent of the General Assembly. To do this, we look first to the words of the statutes. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo. 1991). The words and phrases used must be read in context and accorded their plain and ordinary meaning. *Scoggins v. Unigard Insurance Co.,* 869 P.2d 202 (Colo.1994).

Further, the statutory scheme is to be construed in a manner that gives consistent, harmonious, and sensible effect to all of its parts. *See In re Marriage of Wall,* 851 P.2d 224 (Colo.App.1992).

■ The No-fault Act is incorporated into every insurance policy issued in this state insuring the use, maintenance, and ownership of motor vehicles. *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691 (Colo.App.1987). And, the Act is to be liberally construed to further its remedial and beneficent purposes. *Allstate Insurance Co. v. Smith,* 902 P.2d 1386 (Colo.1995).

■ An insurer may impose terms and conditions consistent with public policy as it sees fit. *Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990). However, any terms or provisions of an insurance contract that attempt to dilute, condition, or limit statutorily mandated coverages violate public policy. *Terranova v. State Farm Mutual Automobile Insurance Co.,* 800 P.2d 58 (Colo.1990).

Under §§ 10–4–706 and 10–4–707, C.R.S. 1997, a complying insurance policy provides mandated minimum coverage for liability and PIP benefits. According to § 10–4–711(4), C.R.S.1997, insurers authorized to transact business in this state must provide coverages at least as extensive as the minimum coverages required by §§ 10–4–706 and 10–4–707, and are precluded from excluding such coverages in any contract of liability insurance for injury, wherever issued, covering ownership, maintenance, or use of a motor vehicle while it is in this state.

■ Although § 10–4–705, C.R.S.1997, requires motor vehicle owners to procure PIP benefits coverage, this provision need not be interpreted as exempting insurance carriers from their responsibility to issue insurance policies in compliance with the No-fault Act. Further, no language in the statute excludes in-state insurers from having to provide the minimum coverages required of out-of-state insurers. Indeed, the General Assembly could not have intended to exempt insurers transacting business in this state from the requirements it placed upon out-of-state insurers. *See Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996)(statute to be interpreted to avoid absurd results). Thus, every carrier providing liability coverage for a designated vehicle is required by statute also to provide PIP benefits coverage. *See Murphy v. Dairyland Insurance Co., supra.*

■ Here, it is undisputed that Hawkeye issued an insurance policy providing liability coverage in the case of an accident resulting from garage operations for certain denominated automobiles including "non-owned autos used in [plaintiff's] garage business." Plaintiff was injured in an accident involving a non-owned automobile used in his garage business. Accordingly, Hawkeye was required to provide PIP benefits coverage for those motor vehicles for which it provided liability coverage. Thus, the trial court did not err in determining that Hawkeye was obligated to provide PIP benefits coverage to plaintiff and in directing it, as the primary insurer, to pay such benefits.

The judgment is affirmed.

NEY and RULAND, JJ., concur.