Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 147. No. 14CA2347. People in the Interest of S.T., and Concerning Q.W.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 147

 
 



 Court of Appeals No. 14CA2347
 El Paso County District Court No. 13JV1071
 Honorable G. David Miller, Judge


 The People of the State of Colorado,

 Petitioner-Appellee,

 In the Interest of S.T., a Child, and Concerning Q.W., Â 

 Respondent-Appellant.


 ORDER VACATED AND CASE
 REMANDED WITH DIRECTIONS

 Division VI
 Opinion by JUDGE FURMAN
 Booras and Ashby, JJ., concur

 Announced October 8, 2015


 Amy R. Folsom, County Attorney, Cara L. Nord, Assistant County Attorney, Colorado Springs, Colorado, for Petitioner-Appellee

 Nancy J. Walker-Johnson, Guardian Ad Litem

 Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  In this dependency and neglect case, the juvenile court entered an order allocating parental responsibilities (APR order) for S.T to maternal grandparents. The court entered this order despite father, Q.W., prevailing at the adjudicatory hearing.

 Â¶2Â Â Â Â Â Â Â Â  On appeal, father challenges the APR order. He contends that the juvenile court had no basis to enter this order because the courtâs subject matter jurisdiction terminated after he prevailed at the adjudicatory hearing. We agree. We thus vacate the APR order and remand with directions for the court to discharge father and S.T. from any existing temporary orders entered prior to the adjudicatory hearing.

 I. The Dependency and Neglect Petition

 Â¶3Â Â Â Â Â Â Â Â  The El Paso County Department of Human Services (the Department) became involved in this case after it received a call from someone who was concerned that mother was abusing prescription pills and not properly supervising S.T., an infant. The Departmentâs investigation revealed that mother and her child were staying in a friendâs unsanitary apartment. One day, S.T.âs uncle and a family friend went to the apartment and found S.T. alone, asleep on the floor, with an open container of pills next to him.Â When mother returned to the apartment, they transported her to âdetoxâ because her lips were blue, she could not walk straight, and she appeared confused. Although S.T. was not injured, the Department obtained an emergency custody order and placed S.T. with his maternal grandparents. At the time, father was living in North Carolina, and his paternity as to S.T. had not been established.

 Â¶4Â Â Â Â Â Â Â Â  The Department filed a dependency and neglect petition. The petition alleged that mother was âstruggling with an addictionâ to prescription medications Xanax, Adderall, and Percocet, âwhich places the welfare of the subject child at risk.â When the Department filed the petition, S.T.âs biological father was unknown. So, the petition listed three possible respondent-fathers: father (mother claimed his last name was unknown), J.T., and another unknown father. As to father, the petition stated that he had âmet the child once,â âprovided financial assistance for the care of the [c]hild twice,â and âfailed to intervene in the circumstances described above, which places the welfare of the subject child at risk.â

 Â¶5Â Â Â Â Â Â Â Â  Mother admitted to the petitionâs allegation that S.T.âs environment was injurious to his welfare. Based on this admission, the juvenile court adjudicated S.T. dependent and neglected.

 Â¶6Â Â Â Â Â Â Â Â  Following a paternity test, the juvenile court determined that father was the biological father of S.T. Father denied the allegations in the petition and requested a contested adjudicatory hearing.

 Â¶7Â Â Â Â Â Â Â Â  The juvenile court subsequently conducted the adjudicatory hearing because father waived his jury trial right. At the conclusion of the hearing, the court found:

 
 the Department had not proven the few allegations as to father by a preponderance of the evidence â and, in fact, the allegations were not true;

 
 father did âall he could to establish a relationship with his childâ despite motherâs attempts âat keeping him out of the pictureâ; and

 
 it could not âfind any fault on his part in failing to intervene.â



 Â¶8Â Â Â Â Â Â Â Â  The court then dismissed the petition. But, it did not award custody of S.T. to father. Instead, the court maintained jurisdiction over S.T. based on motherâs admission. The court found that it was in S.T.âs best interests for him to remain in placement with hisÂ maternal grandparents. The court also found that father was not âfitâ to assume custody of S.T. due to his lack of a significant relationship with S.T. and his inability to meet S.T.âs emotional needs.

 Â¶9Â Â Â Â Â Â Â Â  Father did not appeal the adjudicatory order. Nine months later, he moved for an order allocating parental responsibilities. He also moved for summary judgment on his allocation motion, contending that the juvenile court should have awarded him custody of S.T. after the court dismissed the dependency and neglect petition.

 Â¶10Â Â Â Â Â Â Â Â  The juvenile court denied fatherâs motion for summary judgment. But, it held a hearing on his allocation motion. The court first heard evidence about fatherâs fitness for assuming custody of S.T. based on whether father âhas now developed a relationship with his child â such that he is now able, at a minimum, to provide nurturing and safe parenting sufficiently adequate to meet his childâs physical, emotional, and mental health needs and conditions.â After determining that father did not prove he was fit for assuming custody of S.T., the court heard evidence about allocating parental responsibilities for S.T. to someone else.Â At the conclusion of this hearing, the court entered the APR order, which allocated parental responsibilities for S.T. to maternal grandparents.

 II. Our Jurisdiction

 Â¶11Â Â Â Â Â Â Â Â  Initially, the Department and the childâs guardian ad litem (GAL) contend that fatherâs appeal should be dismissed. They base their contention on father not timely appealing the adjudicatory order. We disagree.

 Â¶12Â Â Â Â Â Â Â Â  Section 19-1-109(2)(c), C.R.S. 2015, provides that an order decreeing a child to be dependent or neglected shall be a final and appealable order only after the entry of a dispositional order. Because the juvenile court dismissed the petition, it did not enter a dispositional order involving father. Thus, the adjudicatory order involving S.T. and father was not final and appealable. See People in Interest of T.R.W., 759 P.2d 768, 770 (Colo. App. 1988). But the APR order is a final appealable order because it left nothing further for the court to decide. See People in Interest of E.C., 259 P.3d 1272, 1276 (Colo. App. 2010).

 Â¶13Â Â Â Â Â Â Â Â  In any event, we may consider at any time whether the court lacked subject matter jurisdiction to enter an APR order. Sullivan v.Â Bd. of Cnty. Commârs, 692 P.2d 1106, 1108 (Colo. 1984) (â[An appellate court] is free to consider the district courtâs possible lack of subject matter jurisdiction notwithstanding any partyâs failure to raise the issue.â).

 Â¶14Â Â Â Â Â Â Â Â  Accordingly, we decline to dismiss fatherâs appeal.

 III. Juvenile Courtâs Jurisdiction

 Â¶15Â Â Â Â Â Â Â Â  We next consider whether the juvenile court in this case lacked subject matter jurisdiction to enter the subsequent APR order. We conclude it did.

 A. Subject Matter Jurisdiction

 Â¶16Â Â Â Â Â Â Â Â  The juvenile court has âexclusive original jurisdictionâ to âdetermine the legal custody of any child . . . who comes within the juvenile courtâs jurisdiction.â Â§ 19-1-104(1)(c), C.R.S. 2015. In a dependency and neglect case, jurisdiction exists where a child has been found to be dependent or neglected. See Â§ 19-3-505(7)(a), C.R.S. 2015; People in Interest of A.M.D., 648 P.2d 625, 639 (Colo. 1982); see People in Interest of N.D.V., 224 P.3d 410, 416 (Colo. App. 2009) (â[W]here a parent admits that the child is neglected or dependent . . . the courtâs acceptance of the admission provides the statutorily required jurisdictional basis.â).

 Â¶17Â Â Â Â Â Â Â Â  A child may be found dependent or neglected at an adjudicatory hearing. See Â§ 19-1-103(3), C.R.S. 2015 (defining âadjudicatory hearingâ). At this hearing, the juvenile court determines whether the allegations in the dependency and neglect petition are supported by a preponderance of the evidence. See Â§ 19-3-505(7)(a) (âWhen the court finds that the allegations of the petition are supported by a preponderance of the evidence . . . the court shall sustain the petition and shall make an order of adjudication.â); People in Interest of A.H., 271 P.3d 1116, 1120 (Colo. App. 2011). If the court makes such a finding, there is a âjurisdictional bas[i]s for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family unit.â A.M.D., 648 P.2d at 640.

 Â¶18Â Â Â Â Â Â Â Â  In contrast, section 19-3-505(6) states what must happen if the allegations in a dependency and neglect petition are not proven:

 When the court finds that the allegations of the petition are not supported by a preponderance of the evidence, the court shall order the petition dismissed and the child discharged from any detention or restriction previously ordered. His or her parents, guardian, or legal custodian shall also be discharged from any restriction or other previous temporary order.

 Â¶19Â Â Â Â Â Â Â Â  We conclude that, once the juvenile court found that the allegations of the petition regarding father were not proven, the court did not have jurisdiction to enter any orders beyond dismissing the petition. Id. The dismissal order resulted in S.T. being âdischarged from any detention or restriction previously ordered,â and the juvenile court lost jurisdiction over him. Id. The dismissal order also resulted in father being âdischarged from any restriction or other previous temporary order,â and the juvenile court lost jurisdiction over father. Id. The court thus erred by holding a fitness hearing and entering the APR order.

 Â¶20Â Â Â Â Â Â Â Â  In support of a contrary conclusion, the Department points to S.T.âs adjudication stemming from motherâs admission. We disagree, based on the presumption of fitness recognized in Troxel v. Granville, 530 U.S. 57 (2000), and the statutory framework of dependency and neglect cases.

 1. Presumption of Fitness

 Â¶21Â Â Â Â Â Â Â Â  The Supreme Court in Troxel recognized that âthere is a presumption that fit parents act in the best interests of their children.â Id. at 68. This presumption is tied to parentsâÂ fundamental liberty interest in the care, custody, and control of the child, which ââdoes not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.ââ A.M.D., 648 P.2d at 632 (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)); see Troxel, 530 U.S. at 66.

 Â¶22Â Â Â Â Â Â Â Â  In Troxel, the grandparents filed a petition to obtain visitation rights with their two grandchildren. The trial court granted the petition after it placed on mother, who was âthe fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters.â 530 U.S. at 69. The Supreme Court held that the decisional framework employed by the court directly contravened âthe traditional presumption that a fit parent will act in the best interest of his or her child,â id. at 68, and was an âunconstitutional infringement on [a parentâs] fundamental right to make decisions concerning the care, custody, and control of [her children],â id. at 72.

 Â¶23Â Â Â Â Â Â Â Â  The Troxel presumption that a fit parent will act in the best interests of his or her child continues in a dependency and neglect case unless a juvenile court finds at the adjudicatory hearing that the allegations of the petition regarding the otherwise fit parent areÂ supported by a preponderance of the evidence. See People in Interest of S.N., 2014 COA 116, Â¶14; A.H., 271 P.3d at 1123. (We express no opinion on whether a deferred adjudication defeats the Troxel presumption.) Thus, here, because the juvenile court dismissed the petition, the court should have presumed father would act in the best interests of S.T. See Troxel, 530 U.S. at 68.

 2. The Statutory Framework of Dependency and Neglect Cases

 Â¶24Â Â Â Â Â Â Â Â  The statutory framework for finding a child dependent or neglected is in accord with the Troxel presumption. The statutes defining âparentâ and what constitutes a âneglected or dependent childâ do not require a finding of parental fitness. See Â§ 19-1Â­103(82) (defining âparentâ); Â§ 19-3-102, C.R.S. 2015 (defining a âneglected or dependent childâ). Instead, the definitions are phrased in terms of parental unfitness, including whether a child lacks proper parental care due to the actions or omissions of the parent, or whether the childâs environment is injurious to his or her welfare. See Â§ 19-3-102(1)(a), (b), (d), and (f); see also Â§ 19-3-502(5), C.R.S. 2015 (âAny parent . . . alleged to have abused or neglected a child shall be named as a respondent in the petition concerning such child.â); People in Interest of N.G., 2012 COA 131, Â¶31.

 Â¶25Â Â Â Â Â Â Â Â  We recognize that prior opinions from this court have held that adjudications of a child are not made as to parents but, rather, ârelate only to the status of the child.â See, e.g., People in Interest of P.D.S., 669 P.2d 627, 627-28 (Colo. App. 1983). From these opinions the Department seems to reason that, despite the juvenile courtâs dismissal order, motherâs admission was sufficient for the juvenile court to maintain jurisdiction to enter the APR order. We do not agree with this reasoning.

 Â¶26Â Â Â Â Â Â Â Â  People in Interest of K.S., 33 Colo. App. 72, 515 P.2d 130 (1973), is the earliest Colorado case to recognize that âthe primary focus of the adjudicatory hearing is to determine the condition and circumstances of the child.â Id. at 75, 515 P.2d at 132. But, the court also stated that âthe acts or omissions of the parents singly and together are relevant in determining the status of the child.â Id.

 Â¶27Â Â Â Â Â Â Â Â  Ten years later, in P.D.S., 669 P.2d 627, a division of this court used the reasoning of K.S. to hold that â[a]djudications of neglect or dependency are not made âas toâ the parents, but rather, relate only to the status of the child.â K.S., 33 Colo. App. at 75, 515 P.2d at 132; see also People in Interest of S.G.L., 214 P.3d 580, 583 (Colo.Â App. 2009); People in Interest of S.B., 742 P.2d 935, 939 (Colo. App. 1987) (â[A]djudications of dependency or neglect are not made as to the parents but, rather, relate only to the status of the child as of the date of the adjudication.â); People in Interest of C.T., 746 P.2d 56, 58 (Colo. App. 1987) (âAdjudications of dependency or neglect . . . relate only to the status of the child.â).

 Â¶28Â Â Â Â Â Â Â Â  We agree with the principle that adjudications of dependency or neglect relate to the âstatus of the child.â But, we disagree with the reasoning that an adjudication of dependency or neglect ârelate[s] only to the status of the childâ without regard to the parentsâ actions or omissions. P.D.S., 669 P.2d at 627 (emphasis added). As noted, the statutory language that defines a child as dependent or neglected is based on various actions or omissions of a parent. See Â§ 19-3-102(1)(a), (b), (d), and (f). An evaluation of a childâs status is not âmade in a vacuum.â People in Interest of J.G., 2014 COA 182, Â¶24 (cert. granted April 6, 2015).

 Â¶29Â Â Â Â Â Â Â Â  The âprimary task in construing a statute is to determine and give effect to the intentâ of the legislature. Mason v. Adams, 961 P.2d 540, 543 (Colo. App. 1997). To respect this intent, we construe an entire statutory scheme âin a manner that givesÂ consistent, harmonious, and sensible effect to all of its parts.â Ortiz v. Hawkeye-Security Ins. Co., 971 P.2d 233, 235 (Colo. App. 1998).

 Â¶30Â Â Â Â Â Â Â Â  If the juvenile court only made findings âas toâ the child, without consideration of each parentâs role, then statutes requiring both evaluation of the parentsâ actions or omissions and naming parents as respondents would be superfluous. See Â§Â§ 19-3Â­102(1)(a), (b), (d), and (f) (discussing parentsâ actions or omissions); 19-3-502(5) (naming parents as respondents). Instead, a fact finderâs consideration of the parentsâ âacts or omissions . . . singly and togetherâ â not merely the childâs environment â âare relevant in determining the status of the child.â K.S., 33 Colo. App. at 75, 515 P.2d at 132.

 Â¶31Â Â Â Â Â Â Â Â  Recently, in People in Interest of J.G., a division of this court again recognized that âadjudications of dependency and neglect are not made âas toâ parents.â Â¶23. But, the courtâs holding was ultimately consistent with the proposition that both parents, and their relationship to a child, must be evaluated separately. The court held that state intervention is not warranted if a âchild has at least one parent who is . . . available[,] . . . able to give the child reasonable parental care . . . [,] and . . . willing to provide suchÂ reasonable parental care.â Id. The âable to give the child reasonable parental careâ language was an elaboration on the fact that parentsâ actions are relevant in a dependency and neglect analysis â though the Troxel fitness presumption still applies.

 Â¶32Â Â Â Â Â Â Â Â  Nevertheless, the Department contends that only one adjudication is necessary because section 19-3-508(1)(b), C.R.S. 2015, the dispositional hearing statute, uses the singular âanâ when describing the adjudication. Â§ 19-3-508(1)(b) (âAfter making an order of adjudication the court shall hear evidence on the proper disposition best serving the interests of the child and the public.â (emphasis added)). For several reasons, we disagree.

 Â¶33Â Â Â Â Â Â Â Â  First, because father exercised his right to have an adjudicatory hearing, the Departmentâs contention ignores the effect of section 19-3-505(6), which states that the juvenile court âshall order the petition dismissedâ and that both the child and parent are âdischarged from any restriction or other previous temporary order.â (Emphasis added.) See Danielson v. Castle Meadows, Inc., 791 P.2d 1106, 1113 (Colo. 1990) (comparing âmayâ with âshallâ and noting that âshallâ indicates a âmandatory requirementâ).

 Â¶34Â Â Â Â Â Â Â Â  Second, adjudicatory hearings that address each parentâs actions or omissions and that name each parent as respondent, as happened here, are often held at different times. Thus, allowing the first adjudicatory hearing to control the disposition of a child would render meaningless the other parentâs constitutional fitness presumption under Troxel. Statutes are âpresumed to be constitutional,â People v. Ford, 773 P.2d 1059, 1062 (Colo. 1989), and, if a statute is âcapable of several constructions, one of which is constitutional, the constitutional construction must be adopted,â People v. Schoondermark, 699 P.2d 411, 415 (Colo. 1985).

 Â¶35Â Â Â Â Â Â Â Â  Third, it would not make sense to adjudicate a child dependent and neglected by imputing to one parent the actions of the other, without additional evidence that the other parent would not intervene to protect the child. See Â§ 19-3-102(1)(a) (âA child is neglected or dependent if . . . [a] parent . . . allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring.â).

 3. The Effect of the Juvenile Courtâs Dismissal

 Â¶36Â Â Â Â Â Â Â Â  Because the juvenile court dismissed the petition involving S.T. and father at the adjudicatory hearing, âthere [was] no reasonÂ for the State to inject itselfâ into fatherâs âfundamental right to make decisions concerning the care, custody, and controlâ of S.T. Troxel, 530 U.S. at 72. After that, the juvenile court did not have jurisdiction to enter the APR order. See Â§ 19-1-104(6) (limiting a juvenile courtâs jurisdiction to enter an order allocating parental responsibilities to â[w]hen the juvenile court maintains jurisdiction in a case involving a child who is dependent or neglected and no child custody action or action for the allocation of parental responsibilities concerning the same child is pending in a district court in this stateâ) (emphasis added).

 Â¶37Â Â Â Â Â Â Â Â  We are not persuaded by the Departmentâs and GALâs contention that it was proper for the juvenile court to maintain jurisdiction after it dismissed the petition because father availed himself of the courtâs jurisdiction by seeking various orders after the adjudicatory hearing. Subject matter jurisdiction cannot be waived or conferred by consent, estoppel, or laches. Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey, 8 P.3d 1200, 1206 (Colo. 2000). Thus, any action taken by father after the adjudicatory hearing did not and could not confer on the court subject matter jurisdiction to determine whether to allocate parental responsibilities.

 B. The Dilemma

 Â¶38Â Â Â Â Â Â Â Â  We acknowledge the dilemma faced by juvenile courts who preside over dependency and neglect cases when the nonresident parent who prevails at the adjudicatory hearing has been absent from much of the childâs life, as father has been, and the child has been in the care of others. But the prevailing parentâs liberty interest is not lost vicariously based on the fault of the other parent. See N.G., Â¶40. And, as discussed, each parent is evaluated separately as to whether the facts alleged in the petition have been proved because each petition alleges separately that parentâs unique role in the childâs maltreatment.

 Â¶39Â Â Â Â Â Â Â Â  We conclude with one final observation. Although paternity was at issue in this case, our review of the record does not reveal a paternity action was ever commenced. Thus, the juvenile court did not have independent jurisdiction under the Uniform Parentage Act to enter an order allocating parental responsibilities. See Â§ 19-4Â­130(1), C.R.S. 2015 (âUpon the filing of any proceeding under this article or under article 13.5 of title 26, C.R.S., the court shall, as soon as practicable, enter a temporary or permanent order allocating parental responsibilities.â).

 IV. Conclusion

 Â¶40Â Â Â Â Â Â Â Â  We vacate the APR order entered in this case and direct the juvenile court, on remand, to discharge father and S.T. from any existing temporary orders entered prior to the adjudicatory hearing involving father and S.T.

 JUDGE BOORAS and JUDGE ASHBY concur.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back